UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-284-H

BRANCH BANKING & TRUST COMPANY,
as Trustee of the Charles A. Brown & Elise A.
Brown Irrevocable Life Insurance Trust                                    PLAINTIFF

V.

PACIFIC LIFE INSURANCE COMPANY                                            DEFENDANT

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Branch Banking & Trust ("BB&T"), charges Pacific Life Insurance Company ("Pacific Life") with breach of contract, breach of fiduciary duty, breach of duty of best execution, and breach of duty of good faith and fair dealing concerning an exchange of life insurance policies under Section 1035 of the Internal Revenue Code.[1]

As fate would have it, the planned exchange and parties' dispute occurred in the fall of 2008, when the stock market fell sharply. The dispute and various other circumstances caused a delay in the transaction, during which time the cash surrender value of the policy declined some $250,000. Though no one claims that Pacific Life acted with an intent to harm BB&T or with an intent to enrich itself, BB&T does blame Pacific Life's breach of contract for the resulting financial loss.

Both parties have filed motions for summary judgment and BB&T has filed a motion for leave to amend its complaint. These motions present some difficult questions of applying

---

[1] BB&T also brought a claim for promissory estoppel, detrimental reliance, and misrepresentation, but stipulated to dismissal of that claim.

Kentucky law in these circumstances. For the reasons that follow, this Court grants BB&T's motion for leave to amend its complaint and its motion for summary judgment on the breach of contract claim.

I.

BB&T is the Trustee of the Charles A. Brown and Elise A. Brown Irrevocable Life Insurance Trust, which was funded by a Pacific Life variable life insurance policy (the "Policy"). BB&T was also the legal owner of the Pacific Life Policy. In August of 2008, BB&T decided to substitute a John Hancock policy with more beneficial terms for that of the Pacific Life Policy. In order to avoid detrimental tax consequences, BB&T decided upon a tax free exchange of the policies under Section 1035 of the Internal Revenue Code. To comply with Section 1035, BB&T proposed to make John Hancock the beneficiary and owner of the Pacific Life Policy. John Hancock would then surrender that policy and use those proceeds to purchase a John Hancock policy. Thereafter, John Hancock would assign the new policy to BB&T.

BB&T began the exchange on August 18, 2008, when it executed an assignment of the Pacific Life Policy to John Hancock. In early September, John Hancock submitted the assignment and surrender request to Pacific Life, executed by BB&T Vice President Walter Koczot and John Hancock's Jonathan Squire. Pacific Life received the 1035 exchange paperwork on September 9, 2008, when the Policy's net cash surrender value was $779, 818.19.

The following day, Pacific Life sent a letter to BB&T, attention Walter Koczot, stating it had "been advised by John Hancock Life Insurance Company (U.S.A.) that your Pacific Life Policy may be replaced," and provided contact information should BB&T "decide to keep your existing policy and cancel your surrender request." Pacific Life sent another letter to John Hancock acknowledging receipt of the 1035 request, but stating that the documents were

2

incomplete because Pacific Life "require[d] the signature of a corporate officer for Branch Banking & Trust Company, as trustee to include title and corporate seal or notary." This letter also stated "[w]e will process the exchange effective the date the final requirement is received."

In mid September 2008, John Hancock sent a "cryptic" e-mail to a BB&T employee not involved in 1035 exchanges notifying them of the new requirements. The BB&T personnel actually involved in the exchange did not learn of the new requirements until October 1, 2008, by which time the net surrender value of the account had fallen to $723, 655.55. BB&T added both a Notary block and seal to the 1035 documents, but did not resubmit them to Pacific Life because it was concerned about actualizing such a large loss. Instead, BB&T demanded that Pacific Life process the surrender request as of the September 9 receipt date. Pacific Life refused to do so. On December 11, 2008, BB&T submitted the 1035 exchange paperwork with the new requirements and a reservations of rights letter. Pacific Life processed the surrender on this date, with a net surrender cash value of $519,891.86, or a loss of $259,926.33.

To recover the Brown family's loss, BB&T filed this lawsuit. It moves for summary judgment on the grounds that Pacific Life violated the surrender provision by refusing John Hancock's request to surrender the net cash value of the policy as of September 9, 2008. Pacific Life responds that it did not breach its contract because John Hancock did not submit a proper "written request" under the policy terms. As part of its response, BB&T moved to amend or correct its complaint to assert its breach of contract claim under a third party beneficiary theory.

II.

The parties now agree that BB&T's assignment of the Policy to John Hancock was valid, and therefore John Hancock was the appropriate party to request surrender. John Hancock made

3

an unequivocal request. However, the parties dispute the date that it became effective. The Policy states that "[u]pon written request while either insured is living you may surrender this policy for its Net Cash Surrender Value. The policy will terminate on the date the request is received at the Home Office." The Policy defines "written request" as "a request in writing signed by you that is satisfactory to PL [Pacific Life] and filed at its home office." "You" is defined as "the owner(s) of this policy as specified in the application unless changed as provided for in the policy." Pacific Life argues that the surrender request was effective only on the date its form was "satisfactory to PL." For the reasons that follow, however, the Court concludes that the surrender request was effective when Pacific Life first received it.

The breach of contract claim is at the heart of the parties' dispute. The Kentucky Court of Appeals has held that a surrender "provision is a 'continuous, irrevocable offer which becomes a binding contract when accepted by the owner of the policy.'" *Farmers Bank & Capital Trust Co. Of Frankfort, Ky. v. Nw. Mut. Life Ins. Co.,* 891 S.W.2d 413, 416 (Ky. App. 1995) (quoting *Sonnenstein v. Mass. Mut. Life Ins. Co.*, 301 A.2d 371, 373 (Pa. Super. Ct. 1973)). It further explained that "[W]hen the owner of the policy accepts the outstanding offer, the insurer then has 'no right, option or privilege to reject the unconditional notification of the exercise by insured of his right to accept the cash surrender value, and when so notified in unqualified terms, the obligation of the company to pay the cash surrender value became then and there a fixed and perfected obligation.'" *Farmers Bank,* 891 S.W.2d at 416 (quoting *Green v. American Nat'l Ins. Co.* 452 S.W.2d 1, 3 (Tex. Ct. Civ. App. 1970)). This rule applies here as follows.

The Policy's surrender provision constituted an outstanding, irrevocable offer which John

4

Hancock accepted on September 9, 2008. That surrender request was unconditional because it contained no exceptions, qualifications or other conditions precedent. To be sure, Pacific Life has every right to require that John Hancock "dot the i's and cross the t's," to assure that such requests be in a form "satisfactory to PL." In our case, Pacific Life wanted a notary on the signature of a third party to the transaction. However, those requirements do not implicate the unconditionality of the original surrender request, not its effective date. Consequently, John Hancock's unqualified surrender request was effective on the date received.

This result is entirely consistent with Kentucky law and the Restatement commentary. *Farmers Bank,* which is the only Kentucky case to directly discuss the effective date of a surrender request in a 1035 exchange, states that the effective date of a surrender request is the date of receipt, even if that request is incomplete at the time. 891 S.W.2d at 416. The Restatement (Second) of Contracts § 25 states that "[a]n option contract .... limits the promiser's power to revoke an offer." The "satisfactory to PL" language gives Pacific Life broad discretion to require compliance with certain formalities, but not to revoke its offer or deny an unconditional acceptance. The Policy's surrender provision clearly creates an irrevocable offer. The "satisfactory to PL" language does not alter its effect. It does not change the legal consequences of Pacific Life's outstanding irrevocable offer which its surrender provision creates. Nor does it change the contractual effect of an unconditional acceptance. The rule established in *Farmer's Bank* and followed here makes common sense because it creates certainty of the effective date of an unconditional acceptance and prevents its unfair manipulation.

III.

BB&T also brings a series of additional state law claims for breach of fiduciary duty, breach of duty of best execution and breach of duty of good faith and fair dealing. The Court cannot find a viable claim among these theories under our circumstances.

The Court has carefully examined the evidence and cannot find any reasonable inference that Pacific Life breached any fiduciary duty or good faith responsibility in its dealings with either BB&T or John Hancock. After all, the latter two planned the 1035 exchange without informing Pacific Life in advance. As this Memorandum suggests, Pacific Life is entitled to insist upon reasonable formalities before surrendering the cash value of the Policy to a third party which was not the original owner.

Pacific Life's insistence upon these formalities and its adherence to a particular legal view of the transaction, do not constitute unfair dealing. Consequently, those claims must be dismissed.

IV.

Because BB&T does not own the Policy and therefore is not a party to the contract, it has moved for leave to amend its complaint and assert, in the alternative, a third party beneficiary claim. An intended third party beneficiary to a contract can enforce the contract. *Simpson v. JOC Coal, Inc.*, 677 S.W.2d 305, 307 (Ky. 1984). To be a third party beneficiary requires a valid contract and the intent "to extract a promise directly benefitting the third party." *Id.* at 309. BB&T initiated this 1035 exchange. John Hancock accepted assignment of the Policy and requested its surrender primarily to benefit BB&T.

Because BB&T sought leave to amend after discovery was complete and the deadline for

dispositive potions had passed, this Court must consider whether it has "show[n] good cause under Rule 16(b) for failure earlier to seek leave to amend" and "evaluate prejudice to the opponent before modifying the scheduling order." *Leary v. Daeschner,* 349 F.3d 888, 909 (6th Cir. 2003). Here, BB&T learned that Pacific Life considered its assignment of the policy to John Hancock effective in September 2008 through a settlement conference statement filed in May of 2010.[2] BB&T did not know the relevance of this admission until Pacific Life moved for summary judgment on June 30, 2010, in part based on the fact that John Hancock, not BB&T, was the real party in interest. BB&T promptly filed its motion for leave to amend on July 2, 2010. The Court concludes that BB&T did have "good cause" for not moving to amend the complaint in accordance with the scheduling order.

Furthermore, Pacific Life will not be prejudiced by the amendment. A breach of contract claim has the same elements whether asserted by a party to the contract or a third party beneficiary. The breach of contract claim is fully discovered and briefed. Given that the law clearly comports with BB&T's breach of contract assertions, this Court feels justice requires granting leave to amend.

V.

The parties fully briefed and this Court has decided the issue of liability in this case. BB&T asks for $259,926.33 plus interest calculated from September 9, 2008 and post-judgment interest. The parties have not briefed the Court on damages. The Court does not know the extent to which Pacific Life may contest this or any issues of causation affecting the amount of

---

[2] BB&T had good reason to believe that Pacific Life did not think the assignment to John Hancock was valid. BB&T alleged in their complaint and Pacific Life admitted that BB&T was the Policy owner "[a]t all times relevant to the issues in this action." Complaint ¶ 3 and Answer ¶ 3. Furthermore, Pacific Life continued to show BB&T as policy owner in its own records after the surrender request and assignment were submitted to Pacific Life.

7

damages. The Court gives the parties thirty (30) days to file memoranda supporting or opposing this proposed judgment.

For the reasons stated, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that BB&T's motion for leave to amend its complaint and its motion for summary judgment on its breach of contract claim are SUSTAINED.

IT IS FURTHER ORDERED that Pacific Life's motion for summary judgment as to all BB&T's claims except the breach of contract claim is SUSTAINED and those other claims are DISMISSED.

IT IS FURTHER ORDERED that the parties have thirty (30) days to file memoranda supporting or opposing the proposed judgment.

cc: Counsel of Record