UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-284-H

BRANCH BANKING & TRUST COMPANY,
as Trustee of the Charles A. Brown & Elise A.
Brown Irrevocable Life Insurance Trust                                          PLAINTIFF

V.

PACIFIC LIFE INSURANCE COMPANY                                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

On November 24, 2010, the Court entered a Memorandum Opinion and Order concerning a Section 1035 exchange involving Branch Banking & Trust Company ("BB&T"), which is the Trustee of the Charles A. Brown and Elise A. Brown Irrevocable Life Insurance Trust, Pacific Life Insurance Company ("Pacific"), which issued a variable life insurance policy (the "Policy") to fund the Trust, and John Hancock, which issued a replacement life insurance policy to BB&T. Relying upon a Kentucky Court of Appeals opinion closely on point, this Court concluded that BB&T's unequivocal request for surrender of the Policy was effective when Pacific received it on September 9, 2008.

The Memorandum did not address an appropriate remedy. The Court's opinion only noted the obvious, that BB&T sought damages of $259,926.33, plus interest. The Court rightly noted that Pacific might contest such a claim. Since then, the parties have filed briefs and made excellent arguments during a conference with the Court. The Court will discuss all of the issues raised during this process.

I.

Pacific uses this briefing as an opportunity to reargue issues which the Court has already decided. No doubt these are a quite unusual confluence of events. Various purposeful acts and miscommunications of both parties contributed to cause what Pacific perceives as a misfortune and a great unfairness. For the reasons described in the Memorandum Opinion and here, this supposed misfortune does not alter the application of Kentucky's rule of law.

The Kentucky Court of Appeals has held that a surrender "provision is a 'continuous, irrevocable offer which becomes a binding contract when accepted by the owner of the policy.'" *Farmers Bank & Capital Trust Co. of Frankfort, Ky. v. Nw. Mut. Life Ins. Co.,* 891 S.W.2d 413, 416 (Ky. App. 1995) (quoting *Sonnenstein v. Mass. Mut. Life Ins. Co.*, 301 A.2d 371, 373 (Pa. Super. Ct. 1973)). It further explained that "when the owner of the policy accepts the outstanding offer, the insurer then has 'no right, option or privilege to reject the unconditional notification of the exercise by insured of his right to accept the cash surrender value, and when so notified in unqualified terms, the obligation of the company to pay the cash surrender value became then and there a fixed and perfected obligation.'" *Id.* (quoting *Green v. Am. Nat'l Ins. Co.* 452 S.W.2d 1, 3 (Tex. Ct. Civ. App. 1970)).

Pacific remains adamant that the Section 1035 surrender request was not effective under its contract until received in a form "acceptable to PL [Pacific Life]." However, the contract between Pacific and BB&T does not suggest an outcome inconsistent with Kentucky's rule of law. The first step in a Section 1035 exchange is an assignment from BB&T to John Hancock. The parties agree that this assignment was valid, since the contract states Pacific is "not responsible for the validity of any assignment." In order for John Hancock, the new policy

2

owner, to surrender the policy, it must submit a "written request," which is "a request in writing signed by you that is satisfactory to PL [Pacific Life]." "You" is defined as "the owner(s) of this policy," in this case, John Hancock. Pacific never had an issue with John Hancock's signature, but wanted further assurances of the validity of a non-owner's signature. According to the contract, the only signature required for an effective written request is that of the policy owner. That signature was satisfactory to Pacific. According to the contract, "[t]he policy will terminate on the date the request is received," the same result dictated by Kentucky law.

Pacific projects several problematic consequences of the Court's opinion. Pacific suggests that BB&T reconsidered the surrender decision and therefore delayed submitting the additional requirements requested. No one disputes, however, that John Hancock made the unequivocal surrender request. The certainty of that request and its effectiveness under Kentucky law, however, renders such supposed reconsideration irrelevant. Pacific suggests that BB&T's argument for a particular effective date is based entirely on market conditions that make it beneficial to BB&T. The Court acknowledges the possibility that should their positions have been reversed, the parties would have argued differently. Kentucky law forecloses such attempts to manipulate market conditions by either party. This Court's view would remain the same.

Pacific suggests that allowing verification of a surrender request after its effective date is contrary to the intention of the parties to variable universal life insurance contracts in that it shifts market risk to Pacific during the verification process.[1] Pacific is capable of recognizing this risk, if actual, and protecting itself from such risk. Again, however, the *Farmers Bank* rule,

---

[1] Moreover, Pacific also argues that verification after the effective date of a surrender request would mean the new life insurance policy would not be funded or effective despite termination of the Policy. The surrender request, not the sale of securities, terminates the life insurance coverage. *Farmers Bank,* 891 S.W.2d at 416. BB&T recognized and protected against this risk in its contract with John Hancock.

3

in conjunction with the inherent unknowns of the market, provide incentives for both parties to verify the validity of the surrender request as quickly as possible. That the parties together failed to do so, does not change the rule.

Pacific argues that the Court's previous decision would require it to risk selling securities without proper authority or backdate the price of securities to the effective date of surrender in violation of SEC Rule 22c-1. There are many reasons why this argument makes little sense. John Hancock did not actually own securities, but rather units in investments which approximated their value. Imposing a bright line rule for effective date of surrender allows Pacific to value the assets in accordance with its contract without having to sell any securities immediately.

Kentucky law seems quite clear and reasonable. While it would benefit Pacific to find a way around the generally applicable law, that would not create a more reasoned, fairer or better result. After reflection, the Court still holds that the surrender request was effective on September 9, 2008.

## II.

As to damages, BB&T's argument is relatively straightforward. It proposes a judgment in the amount of $259,926.33, plus interest compounded at a rate of 8 percent per annum from September 9, 2008 and a post-judgment compound interest rate of 12 percent. The request is based upon the difference between the Policy's stipulated net surrender value on September 9 as $779,818.19 and the amount it eventually received on December 11, 2008, $519,891.86. But for Pacific's failure to transfer the funds to John Hancock as requested, the Trust would have received an additional $259,926.33.

4

Pacific's view of the reality and the appropriate remedy is slightly different. It describes the Policy as a variable universal life insurance policy designed to provide insurance coverage and build cash value. It does so by allowing the policy owner, in this case BB&T and then John Hancock, to invest the accumulated cash value in a variety of separate funds, including equity, bond and cash equivalent markets. According to Pacific, only BB&T or John Hancock, as owner, had the authority to choose among the available investment options and to alter them if it so desired.[2] Pacific argues that it should not be assessed damages for investment choices which BB&T itself had the sole ability and power to effect. In essence, Pacific says its failure to transfer the funds did not cause any investment loss.

Implicit in all of Pacific's arguments is the belief that BB&T is achieving a windfall of some sort.[3] What action BB&T or John Hancock could have taken, had it not issued its unequivocal surrender request, however, is a matter of pure speculation. Whether their return on investment would have been better or worse than what actually occurred, is also a matter of pure speculation.[4]

---

[2] BB&T suggests that, under the contract terms, it could have switched from a variable to a fixed return account only in December, making it impossible to substantially protect against the loss incurred by reallocation of investments with Pacific. BB&T could only reallocate its investments to a fixed return account by completing the 1035 exchange.

[3] The argument is that had John Hancock or BB&T received the full $779,818.19 on September 9, it would have reinvested in the market and experienced the same lost principal. In fact, had BB&T obtained the additional $259,976.33 on either September 8 or December 15 of 2008 and reinvested in a DOW fund, that principal would have increased approximately 6% or 41%, respectively to the present day, not including dividend income. So, it is not clear that anyone has received a windfall by today.

[4] While not controlling, this Court finds the reasoning of the Supreme Court of Delaware persuasive when it stated, "Although it is simple enough to identify, with hindsight, a steadily rising or a steadily declining market, it is unrealistic to suppose . . . that stockholders can accurately forecast whether the present trend in the share price will continue or whether the trend will be reversed, and then act accordingly to mitigate damages." *Duncan v. Theratx, Inc.,* 775 A.2d 1019, 1026 (Del. 2001).

This Court has found no controlling law addressing damages or mitigation under this particular set of circumstances. True, the Sixth Circuit has suggested mitigation may be appropriate at times within the securities context. *Smith v. Manausa,* 535 F.2d 353, 354-55 (6th Cir. 1976) and *Bass v. Janney Montgomery Scott, Inc.,* 210 F.3d 577, 589 (6th Cir. 2000) (applying Tennessee law). However, with this unusual set of facts, Kentucky law might not require mitigation. *See Superior Woolen Co. Tailors, Inc. v. M. Samuels & Co., Inc.*, 293 S.W. 1078, 1079 (Ky. 1927) (stating that "[w]hile under the rule in damage cases it is the duty of a party to use ordinary care to minimize damages, this rule has no application to a contract to pay absolutely a certain sum of money."). The surrender request was effective on September 9, 2008 and the value of the account on that date was known. The surrender request was executed in December 2008 and the account then too had a known, lower value. The damages are certain and ascertainable. In other words, the damages are based on the contract surrender requirements. The Court can find no sound principle of mitigation which it could apply logically or ascertainably in these circumstances.

Certain damages are liquidated damages. *See Nucor Corp. v. Gen. Elec. Co.,* 812 S.W.2d 136, 141 (Ky. 1991) and *W.N. Poundstone v. Patriot Coal Co., Ltd.,* 485 F.3d 891, 902-03 (6th Cir. 2007). "When the damages are 'liquidated,' prejudgment interest follows as a matter of course." *Nucor,* 812 S.W.2d at 141. Prejudgment interest in Kentucky is set at eight percent.[5] K.R.S. §360.010 and *W.N. Poundstone,* 485 F.3d at 903. The post-judgment interest rate in Kentucky is twelve percent compounded annually. K.R.S. §360.040 and *Emberton v. GMRI,*

---

[5] A court has discretion to determine if the prejudgment interest is compound or simple interest. *Clay v. K. Petroleum, Inc.,* Civil No. 07-113-REW, 2008 WL 2308118, at *9 (E.D. Ky. June 2, 2008) (awarding compound interest when the plaintiff would have been able to earn compound interest on that money during the time it was deprived of the use of its money).

*Inc.,* 299 S.W.3d 565, 582 - 84 (Ky. 2010).

There can be no doubt that the circumstances have conspired to Pacific's disadvantage. Had this dispute arisen under different market circumstances, we would not be at this contretemps. Under any ruling of this Court, the other side could claim some unfairness. The Kentucky rule is a good one and a reasonable one. The Court has applied it.

For the reasons stated, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that BB&T is awarded $259,926.33 in damages, with eight percent prejudgment interest and twelve percent post-judgment interest compounded.

This is a final order.

cc: Counsel of Record