UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:09-CV-284-H

BRANCH BANKING & TRUST COMPANY,                             PLAINTIFF
as Trustee of the Charles A. Brown & Elise A.
Brown Irrevocable Life Insurance Trust

V.

PACIFIC LIFE INSURANCE COMPANY                                DEFENDANT

**MEMORANDUM OPINION**

Before the Court is Pacific Life Insurance Company's motion to compel Branch Banking & Trust Company ("BB&T") to produce information related to the Court's December 3, 2013 proposed jury instructions. ECF No. 99. BB&T objects to this discovery, arguing that the requests do not meet the relevance standard, are overbroad, and are unduly burdensome. For the reasons discussed below, the Court will deny Pacific Life's motion to compel.

I.

The Court incorporates by reference the facts set forth in the Sixth Circuit's opinion remanding this case. *See Branch Banking & Trust Co. v. Pac. Life Ins. Co.*, 520 F. App'x 403, 405−06 (6th Cir. 2013).

On December 3, 2013, the Court ruled on the parties' cross motions for summary judgment. At the request of the parties, the Court included a proposed jury instruction, which was subject to change. *See* ECF No. 99. This instruction reads:

1. You must determine whether Pacific Life was reasonable in requiring title and corporate seal or notary with Walter Koczot's signature to complete the surrender request.

> Pacific life may impose requirements upon a surrender request which allow it to be objectively satisfied that the request is legitimate. In deciding whether Pacific Life's requirements were reasonable, you must decide whether the surrender request was objectively satisfactory from Pacific Life's perspective. You should not consider Pacific Life's subjective viewpoint.
>
> You can, but are not required to, consider the following, as well as anything else you find relevant to your determination:
> 1. Whether Pacific Life had a reason to seek assurances of proper assignment from BB&T;
> 2. Whether Pacific Life's prior communications to BB&T representative Walter Koczot demonstrated its recognition of Koczot as BB&T's authorized agent prior to August 2008;
> 3. Whether it is Pacific Life's practice or policy to request a notarized signature or corporate seal in similar circumstances; and
> 4. Whether it is the custom of the life insurance industry to request such additional information.
>
> If you find that Pacific Life's requirement was reasonable, enter a verdict for Pacific Life under Question 1 of the Verdict Form. If you find that Pacific Life's requirement was unreasonable, enter a verdict for BB&T under Question 1 of the Verdict Form.

First, the Court notes that this draft instruction was provided with considerable reluctance upon the parties' request as guidance in light of the Sixth Circuit's opinion in this case. It was not meant to be definitive or final. What exact evidence a party feels it needs to prove its case or defense is ultimately left to the initiative of the parties, subject to motion practice on admissibility, and is not typically contained within a jury instruction.

Pacific Life now moves to compel BB&T to produce information it says is relevant to item 4 above: whether it is the custom of the life insurance industry to request a notarized signature or corporate seal in similar circumstances, *i.e.* Section 1035 Exchanges.

Specifically, Pacific Life requests information regarding: (1) whether BB&T has required signature verification in any type of financial transaction from January 2008 to the present, (2) whether BB&T has executed any other life insurance surrender forms from January 2008 to the present, (3) whether BB&T has executed any other life insurance assignment forms from January

2

2008 to the present, and (4) whether BB&T has any written internal policies relating to signature or identity verification in any type of financial transaction. Pacific Life also (5) wants copies of any life insurance surrender forms executed by BB&T as trustee or in its corporate capacity from 2008 to 2013.

II.

Discoverable evidence is evidence that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b). The inquiry in this case is whether Pacific Life's request for notarized signature or corporate seal was reasonable. The case is not about what, if anything, BB&T required in its financial transactions. It appears that Pacific Life has misconstrued the phrase "custom of the life insurance industry." The only relevant custom-related information here relates to whether life insurance companies have a custom of requesting notarized signature or corporate seal in Section 1035 Exchanges from a party in BB&T's position. To the extent that Pacific Life's discovery requests exceed the scope of this inquiry, those requests are not reasonably calculated to lead to admissible evidence.

Pacific Life's first request for information regarding whether BB&T has required signature verification in any type of financial transaction from January 2008 to the present is inapposite for three reasons. First, "any type of financial transaction" far exceeds the scope of a Section 1035 Exchange. Second, industry custom during the time period after the events in this case is irrelevant. Finally, and most importantly, BB&T's signature verification requirements are not at issue in this case and do not inform the question of life insurance companies' customary requirements in a Section 1035 Exchange.

Pacific Life's fourth request fails for similar reasons. In this case, it does not matter whether BB&T has any written internal policies relating to signature or identity verification.

Pacific Life's third request for information regarding whether BB&T has executed any other life insurance assignment forms from January 2008 to the present is problematic for two reasons. First, as described above, the time period is over-inclusive. Second, this case is not about BB&T's assignment to John Hancock. As the Sixth Circuit pointed out, Pacific Life has already conceded that BB&T's assignment to John Hancock was valid. Other assignment forms executed by BB&T are not reasonably calculated to lead to admissible evidence.

Pacific Life's second and fifth requests involve any other life insurance surrender forms executed by BB&T as trustee or in its corporate capacity from 2008 to 2013. Again, this request is overbroad insofar as it exceeds the time period of the events in this case. In addition, this request is overbroad insofar as it involves life insurance surrender forms outside the scope of the Section 1035 Exchange process. BB&T has already produced copies of signature pages of Section 1035 Exchange forms that it submitted as trustee between January 1 and September 9, 2008. These pages should provide Pacific Life with the information it seeks—whether a notarized signature or corporate seal was used.

However, the use of a notary or corporate seal alone does not make these items relevant. Again, the issue here is whether, under the facts of this case, Pacific Life's request for corporate seal or notarized signature along with Koczot's signature was reasonable. What BB&T may have submitted to other life insurance companies in other Section 1035 Exchanges does not, in and of itself, inform that question. Rather, potentially relevant custom-related information would be: (1) an insurance company's (2) *requirement*, or lack thereof, (3) of a notarized signature or corporate seal (4) from a person in a position analogous to BB&T representative Walter Koczot (5) in a Section 1035 Exchange.

In light of the highly questionable probative value of any discovery involving other life insurance companies, the Court is concerned about the burden that such discovery will impose on the parties. The Court anticipates that the parties will be able to present the majority of their evidence pertaining to industry custom via expert testimony at trial.

With all of the foregoing in mind, the Court will instruct BB&T to produce full copies of the Section 1035 Exchange forms it submitted as trustee between January 1, 2008 and December 11, 2008, the date on which it submitted the additional requested information to Pacific Life. It is the Court's understanding that such forms are typically two to three pages long in total, and producing them will not impose a significant burden, especially since BB&T has already produced the signature pages of the majority of these forms. The Court is not ruling on the admissibility of these forms or the information contained in them at this time.

Finally, the Court finds that BB&T properly limited the scope of its discovery responses to BB&T Wealth.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Pacific Life's motion to compel discovery is DENIED in part and SUSTAINED in part, in accordance with this opinion.

Date:

cc: Counsel of Record